**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0086-18T1

RENÉ PISTILLI-LEOPARDI,
INDIVIDUALLY AND AS
EXECUTOR OF THE ESTATE
OF EDWARD LEOPARDI,

     Plaintiff-Appellant,

v.

MEDIANEWS GROUP, INC.
d/b/a DIGITAL FIRST MEDIA
d/b/a THE TRENTONIAN,
DAVID FOSTER, ISAAC
AVILUCEA, THE CITY OF
TRENTON, THE TRENTON
POLICE DEPARTMENT, THE
COUNTY OF MERCER, and
ANGELO J. ONOFRI, IN HIS
OFFICIAL CAPACITY AS
MERCER COUNTY
PROSECUTOR,

     Defendants-Respondents.

_____

Argued telephonically April 28, 2020 –
Decided July 14, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2066-17.

Frank Guaracini, III argued the cause for appellant (Blaney & Karavan, PC, attorneys; Frank Guaracini, III, of counsel and on the briefs).

Eli M. Segal argued the cause for respondents MediaNews Group, Inc., The Trentonian, David Foster, and Isaac Avilucea (Pepper Hamilton, LLP, attorneys; Eli M. Segal and Meredith C. Sherman, on the brief).

John Morelli argued the cause for respondents City of Trenton and Trenton Police Department (John Morelli, City Attorney, attorney; John Morelli and Julie Murray, Assistant City Attorney, on the brief).

Paul R. Adezio argued the cause for respondent County of Mercer (Paul R. Adezio, Mercer County Counsel, attorney; Paul R. Adezio, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from orders entered by the Law Division on November 17, 2017, and June 28, 2018, which dismissed her claims against defendants, and an order dated August 24, 2018, which denied her motions for reconsideration of the prior orders and leave to file an amended complaint.  We affirm in part, reverse in part, and remand for further proceedings.

## I.

In September 2017, plaintiff, in her individual capacity and on behalf of the estate of decedent Edward Leopardi (Leopardi), filed this action against MediaNews Group, Inc. d/b/a Digital First Media (MediaNews), the company that owns and operates The Trentonian online and print newspaper, along with David Foster and Isaac Avilucea, two reporters for the paper (collectively, the Media Defendants). In the complaint, plaintiff also named as defendants the County of Mercer (County); Angelo J. Onofri, the Mercer County Prosecutor, in his official capacity; the City of Trenton (City); the Trenton Police Department (TPD) (collectively, the Public Entity Defendants); and certain fictitious parties.

Plaintiff alleged that on September 21, 2016, The Trentonian printed an article titled, "Trenton Cop allegedly had anal sex with prostitute while on duty, sources say," which stated that Leopardi was the officer allegedly involved and that the matter was under investigation. Foster is identified as the author of the story and Avilucea as having contributed to it. The article also was posted to the internet.

The article reported that the Mercer County Prosecutor's Office (MCPO) had confirmed the existence of the investigation and that "multiple sources" told The Trentonian Leopardi had anal sexual intercourse with a prostitute while on

A-0086-18T1

duty at the headquarters of the TPD's K-9 unit. The article also stated that "multiple sources" had alleged Leopardi "wiped his dick on the headquarters' curtains after having possible unprotected sex with the prostitute." It stated that according to "multiple police sources," the State Police's crime laboratory had seized the seat cushions and curtains from the TPD's K-9 facility.

According to the article, the woman claimed she also had sexual relations with four or five other officers of the TPD. The woman said she had disclosed the information about Leopardi after he refused to help her following her arrest on an unrelated charge. The article did not name any sources for the story and noted that Leopardi had not responded to multiple requests for comment. After its publication online, Foster and Avilucea published the article to social media sites.

In her complaint, plaintiff alleged that after he read the article in The Trentonian, Leopardi "suffered great upset, shock, and mental and emotional distress, and suffered shame, humiliation, and embarrassment." Plaintiff alleged that within an hour after he read the article, Leopardi committed suicide. She claimed the article contributed to Leopardi's "decision to end his own life."

Plaintiff further alleged that shortly after Leopardi died, Avilucea called plaintiff and left a voicemail seeking a comment on his death. She alleged

4

Avilucea made the call "with actual malice, recklessness, or in willful disregard for the rights of others[.]" Plaintiff claimed Avilucea acted with the intention to cause her emotional distress or with reckless disregard of the risk that she would suffer such distress.

On the day the article was posted to the internet, The Trentonian published a second article, entitled "Trenton cop commits suicide amid prostitute sex probe," which substantially repeated the statements in the first article. The second article updated the story with news of Leopardi's suicide and statements by public officials and Leopardi's colleagues expressing grief and concern about his death.

Plaintiff alleged that both articles about the investigation contained false and defamatory statements about Leopardi. She claimed Avilucea was unfit and incompetent in writing, editing or reporting the news. She alleged MediaNews knew or should have known that Avilucea was unfit and incompetent and could have reasonably foreseen these qualities created a risk of harm.

Plaintiff also claimed the Public Entity Defendants communicated false, defamatory, and confidential information to The Trentonian about the internal affairs investigations. She claimed that in so doing, these defendants "acted with

5

actual malice, with knowledge that the information was false, and/or in reckless disregard of their truth."

She further alleged that all defendants intentionally inflicted emotional distress on Leopardi by engaging in conduct that was "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Plaintiff also claimed defendants negligently inflicted emotional distress, which she sustained as a "bystander" upon viewing her husband's dead body. In addition, she asserted claims of wrongful death and loss of consortium.

In lieu of an answer, the County filed a motion pursuant to Rule 4:6-2(e) to dismiss the claims against it. The County argued that plaintiff failed to state any claim upon which relief could be granted. The judge heard oral argument, placed a decision on the record, and entered an order dated November 17, 2017, granting the motion.

In December 2017 and January 2018, the Media Defendants and the Public Entity Defendants filed motions under Rule 4:6-2(e) to dismiss the claims against them. While the motions were pending, the judge ordered the MCPO and TPD to produce reports pertaining to their internal affairs investigations of

6

Leopardi's alleged misconduct but limited access to the reports to persons who could obtain access through discovery in this litigation.[1]

The judge heard oral argument on the motions and entered orders dated June 28, 2018, granting the motions for reasons set forth in a written opinion. In July 2018, plaintiff filed a motion seeking reconsideration of the court's orders dismissing her claims and a motion for leave to amend the complaint to incorporate facts drawn from the report of the internal affairs investigations by the MCPO and TPD.

In the proposed amended complaint, plaintiff did not name Onofri as a defendant, but sought to add Diana Otero, a detective in the Internal Affairs Unit of the TPD, and Brian Cottrell, a detective in the MCPO, as defendants. Plaintiff also removed counts alleging improper publication of private facts, negligence, and negligent infliction of emotional distress based on the effect the defamatory articles had on plaintiff and Leopardi.

The judge heard oral argument and entered an order dated August 24, 2018, denying the motions. This appeal followed.

---

[1] Plaintiff filed a separate action seeking access to the investigative reports pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. The trial court denied the application and plaintiff appealed. We affirmed the trial court's ruling that the records were not subject to disclosure under OPRA. Doe v. City of Trenton, No. A-5943-17 (App. Div. Oct. 7, 2019).

7

While the appeal was pending, plaintiff filed a motion pursuant to Rule 2:8-3(b) for summary disposition. Plaintiff also sought to supplement the record with a certification dated April 22, 2019, in which she recounted a conversation she had with a former officer in the TPD. Plaintiff claimed the conversation provided further support for her defamation claims.

We denied plaintiff's motion for summary disposition of the appeal and reserved decision on the motion to supplement the record. We now deny the motion to supplement, concluding that the appeal must be decided based on the record before the trial court when it made the decisions at issue on appeal. See Davis v. Devereux Foundation, 209 N.J. 269, 296 n.8 (2012) (citing R. 2:5-4; New Jersey DYFS v. M.M., 189 N.J. 261, 278 (2007); State v. Golotta, 178 N.J. 205, 211-12 (2003)) (noting that "appellate review is limited to the record developed before the trial court.").

## II.

On appeal, plaintiff argues that the judge erred by dismissing certain claims as initially filed, denying reconsideration of those decisions, and denying her motion for leave to file an amended complaint. Plaintiff contends she pled sufficient facts to state the claims asserted in the initial complaint. Plaintiff also contends the judge erred by finding pursuit of the claims set forth in the

proposed amended complaint would be futile.[2]  Our consideration of plaintiff's argument on appeal is guided by the following principles.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 4:6-2(e).  When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."  Ibid.  However, if the parties do not submit matters outside the pleading to the court for its consideration, the court is required to decide the motion "based on the pleadings themselves."  Roa v. Roa, 200 N.J. 555, 562 (2010).

In determining whether to dismiss claims pursuant to Rule 4:6-2(e), the court considers the "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

---

[2] As noted, the claims against Onofri, as well as the claims for improper publication of private facts, negligence, and negligent infliction of emotional distress based on the publication of the alleged defamatory articles were abandoned in the amended complaint.  In her briefs, plaintiff has not argued that the court erred in dismissing the claims as initially pled.  Therefore, any argument in this regard is deemed waived.  See Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App. Div. 2016).

A-0086-18T1

The court must determine if "a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). When doing so, the court must search "the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

"[T]he facts as pleaded must be taken to be true for the purposes of the motion, and the court's 'inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint.'" Darakjian v. Hanna, 366 N.J. Super. 238, 248 (App. Div. 2004) (quoting Printing Mart, 116 N.J. at 746). In ruling on a motion to dismiss pursuant to Rule 4:6-2(e), "the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint[,]" and "plaintiffs are entitled to every reasonable inference of fact." Printing Mart, 116 N.J. at 746.

Dismissal for failure to state a claim "should be granted in only the rarest of instances." Id. at 772. "The examination of a complaint's allegations of fact required by the [previously stated] principles should be one that is at once

10

painstaking and undertaken with a generous and hospitable approach." Id. at 746. "We employ a plenary standard of review over a trial court's decision to grant a Rule 4:6-2(e) motion to dismiss for failure to state a claim upon which relief can be granted." Bacon v. New Jersey State Dep't of Educ., 443 N.J. Super. 24, 33 (App. Div. 2015).

In addition, a party may seek reconsideration of any judgment or order. R. 4:49-2. However, reconsideration is generally limited to cases "in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence . . . ." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div.1990)).

Furthermore, "[a] party may amend any pleading as a matter of course at any time before a responsive pleading is served" or, after the pleading has been served, with the "consent of the adverse party or . . . leave of court which shall be freely given in the interest of justice." R. 4:9-1. "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile . . . . [T]hat is, whether the amended claim will nonetheless fail and, hence, allowing the

amendment would be a useless endeavor." Notte v. Merchs. Mut. Ins., 185 N.J. 490, 501 (2006).

III.

In count one of her initial complaint, plaintiff asserted a defamation claim against the Media Defendants. In her amended complaint, plaintiff asserted defamation claims against the Media Defendants in counts one and two. In count one, plaintiff alleged the Media Defendants published certain false and defamatory statements about Leopardi with knowledge of their falsity. In count two, plaintiff claimed the Media Defendants published the statements with reckless disregard for the truth.

To prevail on a defamation claim against a media defendant in a matter of public interest and concern, the plaintiff must show the defendant: (1) made a false and defamatory statement about the plaintiff; (2) communicated the statement, which was not privileged, to another person; and (3) published the statement with actual malice. Durando v. Nutley Sun, 209 N.J. 235, 248 (2012) (citing G.D. v. Kenny, 205 N.J. 275, 292-93 (2011)). To establish actual malice, the plaintiff must show the media defendant communicated the defamatory statement knowing it was false or with reckless disregard of whether the

statement was true.  Id. at 251 (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)).

In a defamation action involving a public figure, the liability of a media defendant does not turn on whether the defendant acted reasonably.  Lawrence v. Bauer Publ'g & Printing Ltd., 89 N.J. 451, 467-68 (1982).  Rather, the media defendant's liability turns on the defendant's "subjective awareness" of the probable falsity of the statement and whether the defendant had "actual doubts as to its accuracy . . . ."  Ibid.

A media defendant may be found to have acted recklessly if the defendant either "fabricates a story, or publishes a story . . . that is wholly unbelievable, or relies on an informant of dubious veracity," or "purposely avoids the truth."  Gray v. Press Commc'ns, LLC, 342 N.J. Super. 1, 11 (App. Div. 2001).  "That an editor or reporter 'should have known' or 'should have doubted [the] accuracy' of an article before publishing it is insufficient to show reckless disregard for the truth."  Durando, 209 N.J. at 251-52 (alteration in original) (quoting Lawrence, 89 N.J. at 467).

"To act with reckless disregard of the truth," a defendant must have actually doubted "the veracity of the article[,]" id. at 252, or "had a subjective awareness of the story's probable falsity[.]"  Costello v. Ocean Cty. Observer,

13

136 N.J. 594, 615 (App. Div. 1994). In making that determination, "the thought processes of the particular defendant" is relevant. Durando, 209 N.J. at 251. "[T]he plaintiff might show that the defendant had found internal inconsistencies or apparently reliable information that contradicted the story's libelous assertions but nevertheless had published the article." Costello, 136 N.J. at 615.

In dismissing the claims as initially pled, the judge observed that although plaintiff claimed certain statements in The Trentonian articles were false and defamatory, she failed to allege sufficient facts to establish that when the Media Defendants published the stories and posted them to the internet, they had "subjective knowledge" certain statements in the stories were false or serious doubts about their truth. The judge stated that, "[c]onclusory allegations of actual malice are insufficient to survive a motion to dismiss for failure to state a claim under New Jersey law."

Furthermore, in his opinion denying plaintiff's motions for reconsideration and to amend the complaint, the judge stated that as pled in the proposed amended complaint, the defamation claims were "basically . . . a repackaging of the allegations that were made earlier" that still suffered from "fundamental gaps" in the initial complaint.

The judge noted that the proposed amendments to the claims did not alter his previous determination that plaintiff had only made conclusory allegations that the Media Defendants published the defamatory statements about Leopardi with actual malice. The judge concluded that pursuit of the defamation claims in the proposed amended complaint would be futile.

We are convinced, however, that plaintiff pled sufficient facts to state claims against the Media Defendants for defamation. As noted, in count one of the proposed amended complaint, plaintiff alleged that the Media Defendants published false and defamatory statements about Leopardi with knowledge that they were false. She claimed the Media Defendants fabricated the statements. Her claim was not based on a conclusory statement, as the motion judge indicated. Rather, she supported her claim with specific factual allegations that, if proven, would support the conclusion that the Media Defendants published the statements with knowledge they were false.

She claimed that the Media Defendants published the statement that "Trenton cop allegedly had anal sex with prostitute while on duty, sources say." Plaintiff claimed that S.W., the woman who was the source of the allegations,

was not a prostitute and had denied she was a prostitute.[3]  Plaintiff also claimed S.W. did not allege she had anal sex with a police officer.  She further claimed there was no evidence that Leopardi engaged in the conduct alleged, and no police sources for the statement.

Plaintiff further alleged that the Media Defendants published the statements that: (1) "'sources have identified the cop as Ed Leopardi";  (2) "Leopardi, a 22-year police veteran, allegedly took the prostitute to K-9 headquarters on 1200 block of East State Street"; and (3) "[t]he details of the encounter are graphic."

Plaintiff claimed S.W. never identified Leopardi as the person who assaulted her.  She alleged S.W. actually identified other police officers who purportedly engaged in sexual misconduct.  She again asserted that S.W. was not a prostitute, Leopardi never engaged in the conduct described, and there were no police sources for the information.

In addition, plaintiff asserted that the Media Defendants had published the following statements: "According to multiple sources, Leopardi had anal sex

_____

[3]  Because the woman claimed she was a victim of a sexual assault, we use initials to identify her.  See R. 1:38-3(c)(12).

16                                                                      A-0086-18T1

with the prostitute. He then allegedly wiped his dick on the headquarters' curtains after having possible unprotected sex with the prostitute."

Plaintiff claimed S.W. never made any allegation of anal sex with a police officer or any allegations regarding curtains. Plaintiff asserted there were no curtains in the K-9 unit. She claimed S.W. never identified Leopardi as the person who assaulted her, and there was no evidence that he engaged in the conduct described.

Moreover, plaintiff alleged the Media Defendants stated in the published stories that "Multiple police sources say seat cushions and the curtains have been seized by a State Police crime lab." Plaintiff claimed there were no police sources for this information. She again asserted that there were no curtains in the K-9 unit.

Plaintiff further alleged the Media Defendants published the following: "Authorities were made aware of the allegations against Leopardi after the prostitute was arrested, sources say. The prostitute requested help from Leopardi, he didn't help and she dimed him out, sources say." Plaintiff again asserted that S.W. was not a prostitute and had denied that she was a prostitute. She claimed that the remainder of the statement is false and had been fabricated.

A-0086-18T1

She also alleged that the Media Defendants published the following statements: "According to multiple police sources with knowledge of the situation, cops used to bring prostitutes to the facility while on duty to have sex with them in the 1990s. That was apparently cleaned up for a period of time. With the latest investigation, it appears city police are back to their old ways." Plaintiff claimed there were no police sources for these statements, and that the remaining statements are false. She alleged Leopardi never engaged in the acts described.

Plaintiff additionally claimed the Media Defendants published the statement that "Multiple messages were left for Leopardi." She alleged that only one message was left. She alleged, "[t]his statement was inserted into the articles for dramatics. She also claimed that in publishing these statements, Avilucea "was motivated by an attempt to bolster" his self-created image "as an outrageous journalist." She further alleged that a timely demand had been made for retraction of the false and defamatory statements, and the Media Defendants did not retract the statements.

In count two of her proposed amended complaint, plaintiff alleged that the Media Defendants published the statements previously described with reckless disregard for the truth. She claimed internal-affairs investigators and law

18

enforcement agencies are prohibited from disclosing allegations and other information related to investigations of the sort made into Leopardi's alleged misconduct.

Plaintiff alleged the Media Defendants were aware of those prohibitions and therefore had reason to doubt the reliability of the sources as well as the truthfulness of the information provided. She alleged the allegations were "so inherently improbable that only a reckless party would have put them into circulation." She claimed the sources for the false and defamatory statements were not reliable, and the Media Defendants "acted with a high degree of awareness that the statements were false." She claimed the recklessness on the part of these defendants "approached the level of publishing a known calculated falsehood."

We have held, however, that "when the allegations of a defamation complaint . . . are limited to the fact of publication and a bare conclusory assertion that the press defendant[]" either knew of or should have known of a defamatory statement's falsity, "with no other factual reference to lend support to the contention, the court may not simply take the facial assertion as a given . . . ." Darakjian, 366 N.J. Super. at 248. However, the court must "evaluate the

circumstances as best it can to determine whether there is any reasonable basis upon which the defamation claim can be seen to be viable." Ibid.

We are convinced the motion judge erred by finding plaintiff failed to allege sufficient facts to support her claim that the Media Defendants published false and defamatory statements about Leopardi and did so with actual malice. In her proposed amended complaint, plaintiff did not rely on the conclusory allegation that the Media Defendants published the statements with knowledge that they were false or with reckless disregard to the truth. She supported the claims with specific factual allegations.

As we stated previously, at the pleading stage, the facts as alleged in the complaint must be taken as true and plaintiff is entitled to the benefit of "every reasonable inference" that can be drawn from those facts. Printing Mart, 116 N.J. at 746. Thus, for purposes of the motion to dismiss, the judge should have accepted as true plaintiff's allegation that the Media Defendants refused her request to retract the stories, and her claim that The Trentonian staff deliberately fabricated false and defamatory statements about Leopardi.

In short, plaintiff pled sufficient facts to support her claim that the Media Defendants published false and defamatory statements about Leopardi "with a high degree of awareness that the statements were false." She pled sufficient

facts to support the conclusion that the Media Defendants fabricated the statements and, in doing so, acted in reckless disregard for the truth.

We therefore conclude the judge erred by dismissing the defamation claims, denying reconsideration of his decision, and refusing to permit plaintiff to amend her complaint to set forth additional factual allegations to support the defamation claims. We also conclude the judge erred by finding that pursuit of the claims, as pled in counts one and two of the proposed amended complaint, would be futile.

IV.

In count two of her initial complaint, plaintiff asserted a claim against the Media Defendants for false light. In count three of the proposed amended complaint, plaintiff alleged that by publishing the articles in The Trentonian and posting the stories to the internet, the Media Defendants placed Leopardi in a false light, which was highly offensive to a reasonable person. Plaintiff claimed the Media Defendants acted in reckless disregard to the falsity of the published materials and the false light in which Leopardi was placed by their publication.

The motion judge dismissed the claim because plaintiff failed to plead sufficient facts showing the Media Defendants acted with actual malice.

21

Thereafter, the judge denied plaintiff's motions for reconsideration of that decision and leave to amend the complaint.

The judge noted that as pled, the false-light claim was based on allegedly defamatory statements. The judge stated that plaintiff could not circumvent the law of defamation by labeling her claim as a false-light claim. The judge found that pursuit of the claim as set forth in the proposed amended complaint would be futile.

On appeal, plaintiff contends the judge erred by dismissing her initial claim, denying reconsideration of that decision, and refusing to permit her to amend the complaint. We agree.

To prevail on a false-light claim, a plaintiff is required to establish: "[1] the false light in which the other [person] was placed would be highly offensive to a reasonable person, and [2] the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Romaine v. Kallinger, 109 N.J. 282, 294 (1988) (quoting Restatement (Second) of Torts § 652E (1977)).

The first element "requires that the contested publicity be untrue[,]" Hart v. City of Jersey City, 308 N.J. Super. 487, 493 (App. Div. 1998), and "a major misrepresentation of plaintiff's character, history, activities, or beliefs[,]" G.D.,

205 N.J. at 308 (quoting Romaine, 109 N.J. at 295). For the second element, "actual malice must be established with 'convincing clarity.'" Durando, 209 N.J. at 249 (quoting New York Times, 376 U.S. at 285-86).

Here, plaintiff pled sufficient facts to support her false-light claim. Plaintiff alleges the Media Defendants published articles which include statements that Leopardi engaged in anal sexual intercourse with a prostitute while on duty and thereafter wiped his penis on the curtains in the TPD's K-9 facility. A fact-finder could conclude that such statements are "highly offensive to a reasonable person . . . ." Romaine, 109 N.J. at 294. See also Soliman v. Kushner Cos., 433 N.J. Super. 153, 172 (App. Div. 2013) (holding it was a jury question whether the video surveillance of bathroom stalls and sink areas "would be highly offensive to a reasonable person").

Plaintiff also alleged the Media Defendants published the statements with knowledge they were false or in reckless disregard to the truth. Thus, plaintiff pled sufficient facts to support her claim that the Media Defendants acted with "a subjective awareness of the story's probable falsity." Costello, 136 N.J. at 615.

We are convinced that in her proposed amended complaint, plaintiff pled sufficient facts to state a claim that the Media Defendants placed Leopardi in a

A-0086-18T1

false light. Therefore, we conclude the judge erred by dismissing the claim as initially pled, refusing to reconsider that determination, and denying leave to amend the complaint. The judge erred by finding that pursuit of the claim as pled in count three of the proposed amended complaint would be futile.

V.

In count four of the initial complaint, plaintiff asserted a claim against the Media Defendants for intentional infliction of emotional distress based on the published stories and phone calls these defendants made to Leopardi and plaintiff. In her proposed amended complaint, plaintiff asserted three claims for intentional infliction of emotional distress. The judge dismissed the claims as initially pled, refused to reconsider that decision, and found pursuit of the claims as asserted in the proposed amended complaint would be futile. On appeal, plaintiff contends she pled sufficient facts to support these claims.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." DeAngelis v. Hill, 180 N.J. 1, 20 (2004). The plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and

to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

"A single event, under the right circumstances, may be extreme and outrageous." Taylor v. Metzger, 152 N.J. 490, 512-513 (1998) (quoting Wilson v. Kiss, 751 F. Supp. 1249, 1254 (E.D. Mich. 1990)). It is well-established, however, that when the conduct underlying the claim is the publication of defamatory statements, the "plaintiff must also show actual malice." DeAngelis, 180 N.J. at 20.

A. Count Four.

In count four of the proposed amended complaint, plaintiff alleged the Media Defendants' conduct "was intentional or reckless in deliberate disregard of a high degree of probability that emotional distress would follow to [Leopardi] . . . and plaintiff." She claimed the Media Defendants "acted with malice, recklessness, or in willful disregard of the rights of others."

Plaintiff claimed the Media Defendants acted intentionally in publishing knowingly false and defamatory allegations, that their conduct was "outrageous in character" and "extreme in degree," and that they proximately caused plaintiff's severe emotional distress. As stated previously, in her defamation

claims, plaintiff alleged sufficient facts that the Media Defendants published false and defamatory statements about Leopardi with actual malice.

Therefore, plaintiff alleged sufficient facts to state a claim against the Media Defendants for the intentional infliction of emotional distress based on the publication of the articles. The motion judge erred in concluding otherwise and finding that pursuit of the claim would be futile.

B. Count Five.

In her initial complaint, plaintiff alleged the Media Defendants intentionally inflicted emotional distress because Avilucea called her for comment after her husband's death. In dismissing the claim as initially pled, the judge found Avilucea's phone call was not so "extreme and outrageous" that it exceeded "all standards of decency." The judge noted that reporters often call the surviving spouse of a public official for a comment upon the official's death.

In count five of her proposed amended complaint, plaintiff alleged Avilucea "did not seek to obtain any legitimate newsworthy comment," but called to "gloat" about having driven Leopardi to suicide. According to plaintiff, Avilucea's call was "motivated by an attempt to bolster his reputation as an outrageous journalist." In support of this allegation, plaintiff attached a copy of

Avilucea's Facebook page, in which he described himself as a "[s]hade thrower" and the "writer you love to hate."

The judge denied plaintiff's motion for reconsideration and for leave to amend the complaint. The judge found that pursuit of the claim as amended would be futile. In making that determination, the judge relied on his earlier analysis, in which he found that when Avilucea called plaintiff for her comment, he engaged in an accepted journalist practice that could not be considered extreme or outrageous.

Plaintiff argues that Avilucea did more than simply call an interested person for a comment on a new story. He contends that Avilucea attempted to contact plaintiff hours after her husband died, apparently in the belief that she was unaware of his death. Plaintiff contends Avilucea did not seek any legitimate newsworthy comment from her but instead sought to report on her reaction to his suicide. She claims he made the call knowing he contributed to an article that contained fabricated information, which allegedly led to Leopardi's suicide. She alleges Avilucea called to "gloat" of his "accomplishment in driving" Leopardi to take his own life.

We are convinced, however, that the judge correctly found that in her initial complaint and proposed amended complaint, plaintiff did not plead

sufficient facts to support a claim for the intentional infliction of emotional distress based on Avilucea's call to plaintiff. As the judge recognized, it is not uncommon for a journalist to contact a family member and ask for comment regarding the death of a public official.

The judge correctly recognized that while the practice may be distressing to members of the decedent's family, the practice is not sufficiently "extreme" or "outrageous" to support a claim for the intentional infliction of emotional distress. Therefore, the judge did not err by concluding that pursuit of the claim as alleged in the proposed amended complaint would be futile.

C. Count Seven.

In her initial complaint, plaintiff claimed the Media Defendants intentionally inflicted emotional distress upon Leopardi when Foster called him and left a voicemail message asking for a comment on the pending investigation against him. Plaintiff included the claim in count seven of her proposed amended complaint.

The judge dismissed the claim, denied reconsideration, and determined that pursuit of the claim as pled in the proposed amended complaint would be futile. On appeal, plaintiff contends she pled sufficient facts to support the claim. Again, we disagree.

Here, the judge correctly determined that plaintiff did not allege sufficient facts to support a claim that Foster's action in calling Leopardi was "extreme and outrageous." Like Avilucea's call to plaintiff, Foster's call to Leopardi was an accepted journalistic practice. It is undisputed that Leopardi was an officer on the City's police force. Articles had been published in <u>The Trentonian</u> reporting he was under investigation for official misconduct.

According to plaintiff, Foster attempted to contact Leopardi for comment about the investigation and left a message for him. Plaintiff claimed <u>The Trentonian</u> reported that "multiple messages" were left for Leopardi. In any event, the facts as alleged are insufficient to show that Foster engaged in conduct that was "extreme" or "outrageous."

As the motion judge pointed out, journalists regularly seek comments from public officials when they are reportedly under investigation for official misconduct, as was the case here. Because plaintiff did not allege sufficient facts to establish this claim, the judge did not err by dismissing the claim, denying reconsideration, and refusing to permit plaintiff to amend the complaint.

A-0086-18T1

## VI.

In her initial complaint, plaintiff claimed Avilucea "was unfit, incompetent, and or [sic] dangerous in the performance of writing, editing, contributing, and/or reporting news" and that MediaNews "could have reasonably foreseen that such qualities created a risk of harm to others." Plaintiff alleged MediaNews' hiring and retention of Avilucea "was the direct and proximate cause" of the harm Leopardi suffered.

In her proposed amended complaint, plaintiff alleged additional facts in support of this claim. She attached an October 2013 article in which Avilucea is quoted as stating he was fired from another newspaper after complaints were made about a story he wrote. Plaintiff also attached a November 2014 article, which reported that a judge had barred a newspaper from publishing an article Avilucea wrote because it contained sensitive information about a juvenile.

On appeal, plaintiff contends the judge erred by dismissing her claim. She maintains she pled sufficient facts to support her claim against MediaNews for the negligent hiring and retention of Avilucea.

"An employer whose employees are brought into contact with members of the public in the course of their employment is responsible for exercising a duty of reasonable care in the selection or retention of its employees." <u>Di Cosala v.</u>

A-0086-18T1

Kay, 91 N.J. 159, 170-71 (1982). "[T]he tort of negligent hiring has as its constituent elements two fundamental requirements." Id. at 173.

The plaintiff first must show that irrespective of whether the employee was acting within the scope of his or her employment, the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." Ibid. The plaintiff also must show that "through the negligence of the employer in hiring the employee, the [employee's] incompetence, unfitness or dangerous characteristics proximately caused the injury." Id. at 174.

Here, plaintiff alleged sufficient facts to establish both elements of the claim. She claimed Avilucea had been previously fired from another position for "improper reporting." She also claimed MediaNews knew Avilucea "[wa]s dangerous or otherwise unfit for the assigned task." See Lingar v. Live-In Companions, Inc., 300 N.J. Super. 22, 30 (App. Div. 1997). In addition, plaintiff alleged sufficient facts to support her claim that Avilucea's "incompetence, unfitness or dangerous characteristics proximately caused the injury" to Leopardi. See Di Cosala, 91 N.J. at 174.

A-0086-18T1

We therefore conclude the judge erred by dismissing the claim, refusing to reconsider that determination, and denying leave to amend the complaint. We are convinced plaintiff pled sufficient facts to state a cause of action against MediaNews for negligent hiring and retention of Avilucea, as set forth in count six of the amended complaint.

VII.

In her initial complaint, plaintiff asserted claims against the City, the TPD, the County, Onofri and fictitious parties for defamation (count eight), false light (count nine), improper publication of private facts (count ten), intentional infliction of emotional distress (count eleven), and negligence (count twelve). The judge dismissed the claims.

Plaintiff then sought reconsideration and leave to amend the complaint. In her proposed amended complaint, she asserted claims against the City, County, the MCPO, and fictitious parties for defamation (count eight), false light (count nine), and intentional infliction of emotional distress (count ten). The judge denied the motions. The judge found that pursuit of these claims would be futile.

A-0086-18T1

A.  Claims against the County.

On appeal, plaintiff argues the judge erred by dismissing the claims against the MCPO.  She claims the MCPO's investigation was focused on Leopardi's employment and was administrative in nature.  She argues that because the MCPO was acting in an administrative capacity when it conducted its investigation, the MCPO was acting as an agent of the County, not the State.  We disagree.

"[W]hen prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the county prosecutors . . . ."  Wright v. State, 169 N.J. 422, 451 (2001).  The "law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General."  Id. at 452.  Thus, "a county cannot be held vicariously liable for the actions of prosecutorial defendants related to the investigation and enforcement of the criminal laws of the State."  Ibid.

Here, the judge dismissed the claims against the County because he was "not satisfied that there is a fundamental cause of action against the county qua county."  The judge noted that plaintiff had not alleged that any County

employees, acting in a non-law enforcement setting, caused plaintiff's alleged injuries. The judge's analysis was correct.

We reject plaintiff's contention that the MCPO's internal affairs investigation was merely an "administrative" matter rather than a criminal investigation. Plaintiff asserts that employees of the MCPO were engaged in an investigation of Leopardi's alleged misconduct. The investigations allegedly included allegations of sexual assault and official misconduct, which are criminal offenses.

In exercising these essential law enforcement functions, the employees of the MCPO were acting as agents of the State, not the County. Therefore, the County could not be liable for the exercise of this function. Wright, 169 N.J. at 451-52. Accordingly, the judge did not err by dismissing the claim, refusing to reconsider that decision, and denying plaintiff's motion to amend the complaint.

B. Claims against the City.

Plaintiff argues the judge erred by finding the City was immune from liability under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Here, plaintiff alleged employees of the City communicated to the news media false and defamatory statements about Leopardi, including statements that Leopardi engaged in sex with a prostitute while on duty.

According to plaintiff, the City's employees made these statements with the intent that they would be published and disseminated by the media. Plaintiff claims that in doing so, the City's employees attempted to pressure Leopardi to resign. She alleges the City employees who communicated with the press did so in connection with the investigation and acted at the direction of supervisors.

The TCA provides generally that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J.S.A. 59:1-2. The TCA also states, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a).

However, "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." N.J.S.A. 59:2-2(b). The TCA further provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10.

We are convinced the trial court did not err by dismissing the claims against the City, refusing to reconsider that determination, and denying the

35

motion to amend the complaint. In her initial complaint and the proposed amended complaint, plaintiff claimed that the City's employees disclosed to the news media information derived from its internal affairs investigation of Leopardi's alleged misconduct.

The alleged wrongful acts were not within the scope of the workers' employment. Moreover, as alleged, the acts constituted willful misconduct. Under the TCA, the City is immune from liability for such acts. Ibid.

## VIII.

In count fifteen of the initial complaint, plaintiff alleged the Public Entity Defendants and certain fictitious parties violated the CRA by disclosing confidential personal information about Leopardi. Plaintiff alleged that, in doing so, these defendants denied Leopardi his right to privacy, as protected by the New Jersey Constitution.

The judge dismissed the claim as to Onofri, finding he was not a person amenable to suit under the CRA. The judge also dismissed the claim as to the City, holding there was nothing in the record showing that the City denied Leopardi of any constitutional right pursuant to an official City policy or custom.

Plaintiff then sought reconsideration and leave to amend the complaint. In her proposed amended complaint, plaintiff asserted claims under the CRA in counts eleven to fifteen. In count eleven, plaintiff alleged certain fictitious parties violated Leopardi's constitutional right to privacy by releasing confidential information from the internal-affairs investigations into his alleged misconduct in contravention of the Attorney General Guidelines.

In count twelve, plaintiff alleged certain fictitious supervisors participated in, directed, or acquiesced in these constitutional violations by their subordinates. In count thirteen, plaintiff alleged the Public Entity Defendants had a policy, practice, or custom that violated Leopardi's constitutional rights by authorizing the disclosure of false and defamatory statements about him in an effort to pressure him to resign.

In denying defendant's motion for reconsideration and for leave to amend the complaint, the judge stated that plaintiff's claims were speculative because she had not identified the person or persons who allegedly disclosed to the media information from the internal-affairs investigations. The judge stated that a CRA claim could not be asserted against the public entities because there was no allegation that any individual deprived Leopardi of a constitutional right

acting under color of law. The judge also stated that plaintiff failed to allege a constitutional violation with sufficient specificity.

The CRA provides, in pertinent part, that a "person who has been deprived of any substantive due process . . . or any substantive rights, privileges, or immunities secured by the Constitution or laws of this State . . . by threats, intimidation[,] or coercion by a person acting under color of law, may bring a civil action for damages . . . ." N.J.S.A. 10:6-2(c). "[T]he Legislature adopted the CRA for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights and to fill any gaps in state statutory anti-discrimination protection." Owens v. Feigin, 194 N.J. 607, 611 (2008).

The New Jersey Constitution states in pertinent part that "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. I, ¶ 1. This constitutional provision "guarantees individuals the right of privacy." Villanova v. Innovative Investigations, Inc., 420 N.J. Super. 353, 359 (App. Div. 2011).

A-0086-18T1

Because the CRA was modeled after 42 U.S.C. § 1983 (Section 1983), which created a federal cause of action for certain constitutional violations, our courts look to federal court decisions applying Section 1983 when reviewing claims brought under the CRA. Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). Thus, it has been held that "[t]he elements of a substantive due process claim under the CRA are the same as those under [Section] 1983." Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 468 (App. Div. 2012).

"[T]he first task" in evaluating a substantive due process claim "is to identify the state actor, the person acting under color of law, that has caused the alleged deprivation." Ibid. (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996)). "The second task is to identify a right, privilege or immunity secured to the claimant by the Constitution or other . . . laws . . . ." Ibid. (quoting Rivkin, 143 N.J. at 363).

However, "the constitutional guarantee 'does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law.'" Felicioni v. Admin. Office of Courts, 404 N.J. Super. 382, 392 (App. Div. 2008) (quoting Rivkin, 143 N.J. at 366). "Rather, substantive due process is reserved for the most egregious governmental abuses against liberty

or property rights, abuses that 'shock the conscience or otherwise offend . . . judicial notions of fairness . . . [and that are] offensive to human dignity.'" Ibid. (alteration in original) (quoting Rivkin, 143 N.J. at 366).

On appeal, plaintiff contends in count eleven, she pled sufficient facts to support her claim of employee liability under the CRA against the fictitious parties. She contends the facts as alleged in count twelve sufficiently state a cause of action under the CRA for supervisor liability against fictitious parties. She also contends she asserted sufficient facts to support her claims against the City and the MCPO under the CRA in count thirteen. We disagree.

Here, the judge correctly determined that plaintiff's CRA claims failed because she did not identify the person or persons who acted "under color of law" and in doing so, deprived Leopardi of any constitutional right. Filgueiras, 426 N.J. Super. at 468. Moreover, plaintiff did not plead sufficient facts to support her claim that the Public Entity Defendants violated Leopardi's constitutional rights to liberty and privacy by disclosing, authorizing the disclosure of, or instituting a policy authorizing the disclosure of false, defamatory, and confidential information about him.

In Filgueiras, we observed that "no New Jersey precedent . . . has recognized a liberty interest in one's good reputation that is embodied in our

state constitution and protected by substantive due process rights." Id. at 473. We declined "to convert what was essentially a tort claim of defamation into something actionable under the CRA[,]" and refused "to recognize a cause of action, particularly one of constitutional dimension, heretofore never recognized under existing jurisprudence . . . ." Id. at 474-75.

Because plaintiff failed to allege that the Public Entity Defendants deprived Leopardi of any fundamental constitutional right by disseminating or authorizing the dissemination of false or confidential information damaging to his reputation, the judge did not err by dismissing count thirteen of the initial complaint, denying reconsideration of that decision, and denying leave to amend the complaint. The judge correctly found that pursuit of the CRA claims in counts eleven, twelve, and thirteen of the proposed amended complaint would be futile.

We reject plaintiff's assertion that her claims were properly pled against the fictitious parties under the so-called "fictitious party" rule. R. 4:26-4. The rule provides in part that "if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for

identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name . . . ." Ibid.

Application of the rule requires the party to demonstrate due diligence in identifying the responsible defendant before the complaint was filed and upon learning the identity of the defendants. Baez v. Paulo, 453 N.J. Super. 422, 439, 441-44 (App. Div. 2018).

Here, plaintiff did not show that before she filed her initial complaint in September 2017, she exercised due diligence in naming either the employees or supervisors who were allegedly involved in the dissemination of information from the internal-affairs investigation. She also failed to show she exercised such due diligence before filing her proposed amended complaint in July 2018.

In any event, as we have explained even if plaintiff had named the persons allegedly responsible for the dissemination of the information, the facts as pled in the initial complaint and in counts eleven, twelve and thirteen of the proposed amended complaint are insufficient to support claims under the CRA. Therefore, the judge did not err by dismissing the claims.

IX.

In count fourteen of the proposed amended complaint, plaintiff alleged that Otero, Cottrell, and certain fictitious parties violated the CRA by subjecting

A-0086-18T1

Leopardi to a state-created danger. Plaintiff alleged that by releasing the false and defamatory statements about Leopardi and declining to take possession of his service firearm in the days prior to his death, these defendants "rendered [Leopardi] more vulnerable to danger than had [d]efendants not acted at all."

The judge determined that plaintiff had not pled a specific constitutional violation in her claims against Otero and Cottrell, because, as state actors serving in an investigative capacity, they were immune from liability under the CRA. The judge also determined that the allegation that these defendants failed to take Leopardi's firearm away from him was a claim of negligence that was not actionable under the CRA.

On appeal, plaintiff contends the judge applied too stringent a standard in reviewing the claim. Plaintiff contends Otero and Cottrell failed to follow exculpatory leads, including allegations that S.W. had attempted to "set up" an officer of the TPD.

Our courts follow the Third Circuit's application of the "state-created danger doctrine." Gonzales v. City of Camden, 357 N.J. Super. 339, 347 (App. Div. 2003). Under that approach, "[a] 'state-created danger' may exist where a state actor either creates a harmful situation or increases a citizen's exposure or

vulnerability to an already-present danger." Haberle v. Troxell, 885 F.3d 171, 175 n.5 (3d Cir. 2018).

"[T]he Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody[,]" Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006), or "against injuries caused by private actors[,]" Haberle, 885 F.3d at 176. "That includes a self-inflicted injury." Ibid.; see also Bright, 443 F.3d at 284 (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)) ("[M]ere 'failure to protect an individual against private violence' does not violate the Due Process Clause."). "There is, however, an obligation to protect individuals against dangers that the government itself creates." Haberle, 885 F.3d at 176.

Here, it is undisputed that Leopardi took his own life. Under the facts as alleged here, Otero, Cottrell, and the other Public Entity Defendants were under no obligation to protect Leopardi from fatally harming himself. See Bright, 443 F.3d at 281. Plaintiff's claim that the TPD failed to take away Leopardi's firearm and her claim that these defendants failed to follow exculpatory leads are essentially claims of omissions, and "there can be no liability in the absence of an affirmative exercise of state authority." Id. at 284.

A-0086-18T1

Furthermore, plaintiff did not allege these defendants exercised State authority that "created" a danger to Leopardi. The internal affairs investigations into his alleged misconduct did not arise directly from the conduct of any state actor, but from the claims of an individual with whom he allegedly had sexual relations. Under the circumstances, Otero, Cottrell, and the other Public Entity Defendants cannot be liable for Leopardi's self-inflicted fatal injury. See Haberle, 885 F.3d at 176.

Thus, the judge did not err by denying leave to amend the complaint. The judge correctly found that pursuit of the claim in count fourteen of the proposed amended complaint would be futile. The judge correctly found that the facts as pled did not state a claim under the CRA based on an alleged "state-created" danger.

## X.

In her initial complaint, plaintiff asserted a claim for the negligent infliction of emotional distress against all defendants. She alleged Leopardi's death was the direct and proximate result of defendants' negligence and that, as a result of viewing Leopardi's dead body, she suffered severe emotional distress.

The judge dismissed the claim, finding that "plaintiff lacked the contemporaneous sensory awareness of her husband's death" because she was

not physically present at the time of the suicide and learned her husband was dead before she observed him. The judge stated that to recover for the negligent infliction of emotional distress under a "bystander" theory, plaintiff must allege facts showing she had a "sensory and contemporaneous observation of the death or injury at the scene."

Plaintiff then sought reconsideration and leave to amend the complaint by pleading additional facts. In count fifteen of the proposed amended complaint, plaintiff alleged decedent's daughter described in "graphic detail" what she had observed when she found Leopardi's dead body. Plaintiff further alleged her neighbor heard the gunshot, told her Leopardi had taken his own life, and described how there was "blood everywhere."

Plaintiff claimed she had to go into the woods near her house to avoid the members of the news media. She alleged that when she later entered the house, she observed the scene of Leopardi's suicide "as it existed at the time of [his] death." She claimed she continued to "see" the suicide scene long after that, because she had to clean blood from the couch, cushions, carpet, and "remainder of her home."

A-0086-18T1

The judge denied plaintiff's motions to reconsider and amend the complaint. In doing so, the judge essentially relied upon the rationale from his earlier decision dismissing this claim.

On appeal, plaintiff contends the judge incorrectly interpreted the law applicable to claims of the negligent infliction of emotional distress upon a "bystander." Plaintiff contends that to state the claim, she need only allege she experienced the "perception of the death" of a family member, not that she observed the death itself.

To prevail on a "bystander" claim for negligent infliction of emotional distress, a plaintiff must prove four elements: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." Portee v. Jaffee, 84 N.J. 88, 101 (1980). "In a bystander case, a plaintiff's theory of recovery is predicated on his or her status as a witness to a horrific event." Lascurain v. City of Newark, 349 N.J. Super. 251, 278 (App. Div. 2002).

However, "[i]n limited circumstances, a plaintiff's emotional injury is considered a foreseeable result of a defendant's negligent conduct even when

47

that emotional injury does not arise necessarily from presence within the zone of physical danger created by the defendant's conduct."  Jablonowska v. Suther, 195 N.J. 91, 103 (2008).  A plaintiff can maintain the cause of action where:

> (1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress.
>
> [Ibid. (citing Portee, 84 N.J. at 97).]

In Hinton v. Meyers, 416 N.J. Super. 141, 144 (App. Div. 2010), we held a plaintiff could not satisfy the third Portee prong "with proof of knowledge or awareness of death or injury but without any contemporaneous sensory perception."  The plaintiff in Hinton did not witness the accident that caused his daughter's death, but was close enough to hear her screams and, later, police sirens.  Id. at 147.  When the plaintiff arrived at the scene, he saw the daughter's broken stroller, but she had already been taken to the hospital where the plaintiff then went and was able to observe her briefly before she died.  Ibid.

We held that "[t]hese facts, viewed most favorably towards [the] plaintiff, do not implicate [the] plaintiff's contemporaneous perception of his daughter's fatal injury for purposes of asserting a Portee claim."  Id. at 148.  We stated that

the plaintiff's observation of his daughter at the hospital "was sufficiently attenuated from the accident to negate the requisite element of contemporaneousness." Ibid.

Here, plaintiff has not alleged facts sufficient to support a claim that she had a "contemporaneous sensory perception" of her husband's fatal injury. Plaintiff alleges she was close enough to the injury-producing event when it occurred. She claims she observed her husband's body after she learned of his death, but this was not contemporaneous with his death.

Indeed, as alleged, plaintiff's observation of her husband's body was more attenuated than the plaintiff's observation in Hinton, where the plaintiff's daughter had not yet died when the plaintiff observed her. Thus, in this case, plaintiff failed to allege sufficient facts to establish the third prong of the Portee test, as defined in Jablonowska.

We conclude the judge correctly determined that in her initial and proposed amended complaints, plaintiff failed to allege sufficient facts to state a claim of negligent infliction of emotional distress. The judge did not err by dismissing the claim, denying reconsideration, and refusing to permit plaintiff to amend the complaint. The judge did not err by finding plaintiff's pursuit of

A-0086-18T1

the claim as pled in count fifteen of the proposed amended complaint would be futile.

XI.

In her initial complaint, plaintiff asserted claims for wrongful death and the loss of consortium. The judge dismissed these claims because they are derivative of claims alleging wrongful acts by defendants that were dismissed. In her proposed amended complaint, plaintiff asserted a claim for wrongful death in count sixteen and a claim for the loss of consortium in count seventeen.

Pursuant to the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, a cause of action lies when "the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury . . . ." N.J.S.A. 2A:31-1. "[T]he Act is remedial in nature, and thus 'is to be liberally construed.'" Miller v. Estate of Sperling, 166 N.J. 370, 381 (2001) (quoting Turon v. J. & L. Constr. Co., 8 N.J. 543, 558 (1952)).

Here, plaintiff pled sufficient facts to support her claims for wrongful death and loss of consortium against the Media Defendants. As we have determined, plaintiff has pled sufficient facts to support her claim that the Media Defendants committed wrongful acts as pled in counts one, two, three, four, and

50

A-0086-18T1

six of the proposed amended complaint. She further alleges the tortious conduct by these defendants was a proximate cause of Leopardi's death and her loss of his services, society and consortium.

Plaintiff did not, however, plead sufficient facts to state claims for wrongful death or loss of consortium against the other defendants. We have concluded that plaintiff failed to plead sufficient facts to support claims alleging wrongful acts by these other defendants. Thus, plaintiff's claims of wrongful death and loss of consortium against the other defendants were properly dismissed.

We conclude the motion judge erred by dismissing the claims against the Media Defendants for wrongful death and loss of consortium, but correctly decided that, as pled, such claims could not be asserted against the other defendants. Accordingly, the judge erred in part by denying reconsideration and refusing to allow plaintiff to amend her complaint. Pursuit of the claims against the Media Defendants for wrongful death and loss of consortium in counts sixteen and seventeen of the proposed amended complaint would not be futile.

## XII.

Plaintiff argues the claims contained in her amended complaint "relate back to the filing date of the original complaint" so that the amended complaint

does not become subject to the one-year statute of limitations for defamation claims. We note, however, that the trial court agreed with plaintiff and held the claims in the proposed amended pleadings relate back to the initial pleadings and are not barred by the statute of limitations. Therefore, we need not address this argument.

Accordingly, we conclude the trial court erred in part by denying plaintiff's motion for reconsideration of its earlier dismissal of certain claims and plaintiff's motion for leave to amend the complaint. We remand the matter to the trial court for further proceedings on the claims asserted by plaintiff against the Media Defendants in counts one, two, three, four, six, sixteen and seventeen of the proposed amended complaint. We conclude plaintiff has pled sufficient facts to state claims against these defendants for defamation, false light, intentional infliction of emotional distress based on the publication of the articles, negligent hiring and retention, wrongful death, and loss of consortium.

For purposes of our decision, we have assumed, as we must, that the facts plaintiff has alleged are true, and in reviewing the pleadings, we have given plaintiff the benefit of every reasonable inference of fact. Printing Mart, 116 N.J. at 746. We express no view on whether plaintiff will ultimately be able to prove the facts as alleged. Ibid. Moreover, nothing in our opinion precludes the

Media Defendants from seeking summary judgment on some or all of the claims after the parties have had an opportunity for discovery.

We also conclude the trial court did not err by dismissing the remaining claims, denying reconsideration of those decisions, and refusing to permit plaintiff to amend the complaint. The judge did not err by denying plaintiff's motion to pursue the claims against the other defendants in counts five, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, and seventeen of the proposed amended complaint. The judge correctly found that, in these counts, plaintiff failed to state claims upon which relief could be granted.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0086-18T1